Citation Nr: 1629295 
Decision Date: 07/22/16 Archive Date: 08/01/16

DOCKET NO. 13-14 008 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Milwaukee, Wisconsin


THE ISSUES

1. Entitlement to service connection for ischemic heart disease, to include as due to herbicide exposure.

2. Entitlement to service connection for diabetes mellitus, type II, to include as due to herbicide exposure.


REPRESENTATION

Veteran represented by: Disabled American Veterans


WITNESS AT HEARING ON APPEAL

The Veteran



ATTORNEY FOR THE BOARD

E. F. Brandau, Associate Counsel


INTRODUCTION

The Veteran has active duty service with the United States Army from January 1969 to January 1972. 

These matters come before the Board of Veterans' Appeals (Board) on appeal from a May 2009 rating decision from the Department of Veterans Affairs (VA) Regional Office (RO). The Veteran testified before the undersigned Veterans Law Judge via videoconference in May 2016. A transcript of the record was prepared and added to the record. 


FINDINGS OF FACT

1. The Veteran visited the demilitarized zone (DMZ) while stationed in Korea between July 1969 and August 1970, and was exposed to herbicides. 

2. The Veteran currently has coronary artery disease and diabetes mellitus, type II.


CONCLUSIONS OF LAW

1. The criteria for service connection for ischemic heart disease (diagnosed as coronary artery disease) have been met. 38 U.S.C.A. §§ 1110, 1116, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309 (2015). 

2. The criteria for service connection for diabetes mellitus, type II, have been met. 38 U.S.C.A. §§ 1110, 1116, 5107; 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309. 

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

This decision represents a full grant of the Veteran's claims. Therefore, no discussion of VA's duty to notify or assist is necessary.

Analysis

Service connection may be established for a disability resulting from disease or injury incurred in or aggravated by service. 38 U.S.C.A. § 1110; 38 C.F.R. § 3.303. Evidence of continuity of symptomatology from the time of service until the present is required where the chronicity of a chronic disease or illness manifested during service either has not been established or might reasonably be questioned. 38 C.F.R. § 3.303(b); see also Walker v. Shinseki, 708 F.3d 1331, 1340 (Fed. Cir. 2013) (holding that only conditions listed as chronic diseases in 38 C.F.R. § 3.309(a) may be considered for service connection under 38 C.F.R. § 3.303(b)). Regulations also provide that service connection may be granted for any disease diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disability was incurred in service. 38 C.F.R. § 3.303(d).
 
Generally, in order to prove service connection, there must be competent, credible evidence of (1) a current disability, (2) in-service incurrence or aggravation of an injury or disease, and (3) a nexus, or link, between the current disability and the in-service disease or injury. See, e.g., Davidson v. Shinseki, 581 F.3d 1313 (Fed. Cir. 2009); Pond v. West, 12 Vet. App. 341 (1999). 

Except as otherwise provided by law, a claimant has the responsibility to present and support a claim for benefits under the laws administered by VA. VA shall consider all information and medical and lay evidence of record. Where there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, VA shall give the benefit of the doubt to the claimant. 38 U.S.C.A. § 5107; 38 C.F.R. § 3.102; see also Gilbert v. Derwinski, 1 Vet. App. 49, 53 (1990).

The Veteran asserts that he has coronary artery disease, which is a form of ischemic heart disease, and diabetes mellitus, type II, as a result of exposure to herbicides during active duty. As an initial matter, the record indicates that the Veteran has been diagnosed with ischemic heart disease and diabetes mellitus, type II. Therefore, the requirement for a current disability has been met.

A veteran who, during active military, naval, or air service, served between April 1, 1968, and August 31, 1971, in a unit that, as determined by the Department of Defense, operated in or near the Korean DMZ in an area in which herbicides are known to have been applied during that period, shall be presumed to have been exposed during such service to an herbicide agent, unless there is affirmative evidence to establish that the veteran was not exposed to any such agent during that service. 38 U.S.C.A. § 1116(a)(3); 38 C.F.R. § 3.307(a)(6)(iv).

If a veteran was exposed to an herbicide agent during active military, naval, or air service, certain diseases, including diabetes mellitus, type II, and ischemic heart disease, shall be service connected if the requirements of 38 C.F.R. § 3.307(a)(6)(iv) are met. 38 U.S.C.A. § 1116; 38 C.F.R. §§ 3.307(a)(6)(iv), 3.309(e). These diseases must become manifest to a degree of 10 percent or more at any time after service. 38 C.F.R. § 3.307(a)(6)(ii).

The Department of Defense (DoD) has provided a list of units recognized as having served in areas along the Korean DMZ. See M21-1, Part IV, Subpart ii, 1.H.4.a, b. Veterans assigned to one of these units are presumed to have been exposed to herbicide agents. The Veteran's DD-214 lists two years, four months, and fourteen days of foreign service and the personnel records that are associated with the record reflect he served in Korea from July 1969 to August 1970, which falls within the requisite time period necessary for "qualifying service in Korea." His personnel records also reflect that during his time in Korea he served as a truck driver with the 2nd Supply and Transportation Battalion (2nd S&T Bn). The Veteran's assigned unit, however, is not among the list of units recognized as having served in areas along the DMZ.

The Veteran has acknowledged in written statements and in testifying before the Board that he was not assigned to a unit serving along the DMZ. He has asserted, however, that while serving in Korea as a truck driver he took care of a village called "Freedom Village" which was on the DMZ. He noted that his duties included taking Korean civilians and supplies to Freedom Village, and transporting dead trees from Freedom Village. He testified that he took trips to Freedom Village up to five times per month, and that he would be up there for the entire day during his trip. In March 2011 the Veteran submitted a written statement indicating that that he also transported supplies to a camp by the DMZ, which may have been named Camp Dodge or Dodge City. Additionally, the Veteran submitted a buddy statement from a fellow service member in the 2nd S&T Bn confirming that the Veteran's truck driver duties took him to the DMZ area during supply missions. 

The RO developed the Veteran's assertions, and an April 2011 reply from the Defense Personnel Records Informal Retrieval System (DPRIS) indicated that the 1969 unit history submitted by the 2nd S&T Bn, was received and documented that the unit was stationed at the Camp Jesup Compound, located approximately six miles from the DMZ. The history documented that the 2nd S&T Bn provided combat service support to the 2nd Infantry Division plus attached units of the 8th United States Army, I Corps, and the units of the 7th Infantry Division. However, the history did not document the use, storage, spraying, or transportation of herbicides. The unit history also did not mention or document any specific duties performed by the unit members along the DMZ. 

As previously mentioned, service personnel records inform that the Veteran served in Korea from July 1969 to August 1970, and that he was attached to the 2nd S&T Bn with an occupational specialty then of truck driver. This is consistent with the reply received from DPRIS and the 1969 unit history DPRIS received, and it is consistent with the Veteran's testimony and lay statements. 

There is lay evidence that the Veteran was in close contact with the DMZ. The Board notes that the service personnel records would not likely document each soldier's specific duties within their assigned units, to include semi-monthly trips driving from base to base. There is also a buddy statement corroborating the Veteran's presence in the DMZ. While the record does not show this explicitly, there is evidence that while the Veteran was in Korea, he transported dead trees from the DMZ area, making it at least as likely as not that he was near or in the DMZ as described. He has consistently asserted that he transported supplies and civilians to and from the DMZ area as well. The Board finds these lay statements credible. Caluza v. Brown, 7 Vet. App. 498, 511 (1995). The evidence suggests that the Veteran was in locations which would expose him to herbicides, and therefore the Board finds that he was exposed to herbicides based on the particular circumstances of his case. While the Veteran was not presumptively exposed to herbicides as he was not in one of the specified units, the evidence of his duties and his proximity to the DMZ suggests that he was exposed to herbicides. 

Given that ischemic heart disease and diabetes mellitus, type II, are presumptively associated with exposure to herbicide agents and that the Board has found exposure to herbicides, service connection for ischemic heart disease and diabetes mellitus, type II, is warranted. 38 C.F.R. § 3.309(e); Gilbert, 1 Vet. App. 49. 


ORDER

Entitlement to service connection for ischemic heart disease, diagnosed as coronary artery disease, is granted.

Entitlement to service connection for diabetes mellitus, type II, is granted.




____________________________________________
Nathan Kroes
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs