﻿Citation Nr: AXXXXXXXX
Decision Date: 08/27/19 Archive Date: 08/27/19

DOCKET NO. 190219-3845
DATE: August 27, 2019

ORDER

An increased 10 percent rating, but not higher, for a left knee strain is granted.

An increased 10 percent rating, but not higher, for a left hip strain is granted.

Service connection for sleep apnea is granted.

VETERAN’S CONTENTIONS

The Veteran contends that his currently-diagnosed sleep apnea began in service, or is otherwise secondary to his service-connected disabilities, to include as a result of weight gain from medications used to treat service-connected disabilities. 

He further contends that his left knee and left hip disabilities are more severe than as currently rated. Specifically, he contends that a higher rating is warranted for his left hip due to painful motion and muscle fatigue, which impair his ability to remain active or walk for prolonged periods. Regarding the left knee, he contends that a higher rating is warranted because of pain, stiffness, painful motion, swelling, and weakness, which affect his ability to walk, go up and down stairs, be physically active, ride in cars for long periods of time, and sit at a desk at work. 

FINDINGS OF FACT

1. The Veteran competently reported in a January 2018 statement that his left knee and left hip disabilities are manifested by painful motion at times. He further described stiffness and swelling in the knee, and an impaired ability to sit, stand, or walk for long periods, or to engage in high impact activities.

2. During a November 2017 VA examination, the Veteran’s left hip exhibited full range of motion, without objective evidence of pain and without additional loss of motion following repetitions. The examiner found no evidence of pain with active or passive motion, with or without weightbearing. Muscle strength was full in left hip extension, flexion, and abduction. The examiner found no functional impairment related to the Veteran’s left hip disability.

3. During a November 2017 VA examination, the Veteran’s left knee exhibited full range of motion, without objective evidence of pain and without additional loss of motion following repetitions. The examiner found no evidence of pain with active or passive motion, with or without weightbearing, and joint stability testing was normal. Muscle strength in left knee extension and flexion was full, and the examiner noted no use of assistive devices. The examiner found no evidence of meniscal involvement and noted that diagnostic imaging did not show arthritis. The examiner noted functional impairment related to squatting and kneeling. 

4. Clinical evidence during the relevant appeal period is essentially silent for left knee or left hip complaints, despite documenting various other pain-related complaints. They further support that the Veteran was somewhat active. In June 2018, the Veteran reported having gone to some Wounded Warrior events, as well as a music festival that involved long periods of standing, albeit with increased “pain” generally. In July 2018, he reported exercising and having gone to a David Blaine magic show. Objectively, when discussed, such as in August 2018, range of motion of the lower extremities was noted to be full and pain free and without obvious instability or laxity. At that time, it was noted that provocative maneuvers of the knee and hip were negative, and that strength was normal. 

5. The AOJ found that new and relevant evidence was received to reopen a claim of entitlement to service connection for sleep apnea.

6. The Veteran sought treatment in service for complaints of sleep difficulty. He reported in March 2010 that he had been having sleep problems for one year, including waking up multiple times a night, and that his girlfriend had informed him he sometimes “stop[ped] breathing.” In April 2010 and May 2010, he respectively reported difficulty with unrestful sleep and a history of snoring. He underwent two sleep studies in service that documented evidence of apnea-hypopnea events as measured by an apnea-hypopnea index (AHI), though not to a level sufficient to warrant a diagnosis of sleep apnea. The April 2010 sleep study revealed an AHI of 1.4, while a November 2010 sleep study showed an AHI of 3. 

7. A December 2015 VA sleep study confirmed a current diagnosis of obstructive sleep apnea.

8. In a December 2015 statement, the Veteran’s then-wife competently and credibly testified as to an onset the Veteran’s sleep issues in service, including his snoring and “choking” or “gasping for air,” and a continuity of those symptoms post service, ultimately leading to the diagnosis of obstructive sleep apnea in December 2015.

9. An April 2016 VA opinion that the Veteran’s current sleep apnea is not related to service is inadequate as it was based on findings inconsistent with the record. Specifically, the examiner, in finding that the Veteran did “NOT HAVE SYMPTOMS COMPATIBLE[] WITH OSA” in service, failed to recognize or discuss the in-service sleep studies ordered for “symptoms consistent with sleep apnea,” as noted by a competent medical authority in service in a March 2010 memorandum. 

CONCLUSIONS OF LAW

1. The criteria for a rating of 10 percent, but no higher, for the Veteran’s left hip strain based on painful motion are met. 38 U.S.C. § 1155; 38 C.F.R. §§ 3.102, 4.59, 4.71a, Diagnostic Code 5252.

2. The criteria for a rating of 10 percent, but no higher, for the Veteran’s left knee strain based on painful motion are met. 38 U.S.C. § 1155; 38 C.F.R. §§ 3.102, 4.59, 4.71a, Diagnostic Code 5260.

3. The criteria for service connection for obstructive sleep apnea are met. 38 U.S.C. §§ 1110, 5107; 38 C.F.R. §§ 3.102, 3.303.

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran served on active duty from July 2008 to April 2011. The Veteran filed a claim of entitlement to service connection for sleep apnea in December 2015, and claims of entitlement to increased ratings for left hip and knee disabilities in September 2017. This matter is before the Board following his appeal of a January 2019 RAMP rating decision that denied his claims.

On August 23, 2017, the President signed into law the Veterans Appeals Improvement and Modernization Act, Pub. L. No 115-55 (to be codified as amended in scattered sections of 38 U.S.C.), 131 Stat. 1105 (2017), also known as the Appeals Modernization Act (AMA). This law creates a new framework for Veterans dissatisfied the Department of Veterans Affairs (VA)’s decision on their claim to seek review. The Veteran chose to participate in VA’s test program for AMA, the Rapid Appeals Modernization Program (RAMP). This decision has been written consistent with the new AMA framework.

The Veteran selected the Higher-Level Review lane when he submitted his RAMP election forms on September 10, 2018 for his sleep apnea claim, and October 26, 2018 for his left hip and left knee claims. The AOJ issued a RAMP rating decision in January 2019 and the Veteran timely appealed to the Board of Veterans’ Appeals (Board), requesting the Direct Review process. 

In adjudicating the sleep apnea claim, the Board may consider evidence associated with the record between the December 28, 2015 date of claim for sleep apnea and evidence submitted by September 10, 2018, the date of receipt of the RAMP opt-in form for that claim. In adjudicating the left hip and left knee increased rating claims, the Board may consider evidence associated with the record between the September 28, 2017 date of claims for increased ratings, and evidence submitted by October 26, 2018, the date of receipt of the RAMP opt-in form for the increased rating claims.

1. Increased Ratings for Left Hip and Left Knee Disabilities

Ratings are based on a schedule of reductions in earning capacity from specific injuries or combination of injuries. The ratings shall be based, as far as practicable, upon the average impairments of earning capacity resulting from such injuries in civil occupations. 38 U.S.C. § 1155. Generally, the degrees of disability specified are considered adequate to compensate for considerable loss of working time from exacerbations or illnesses proportionate to the severity of the several grades of disability. 38 C.F.R. § 4.1.

While rating the limitation of motion of joint-related disabilities, like the knee and the wrist, the rating schedule recognizes that painful motion of a joint can cause a disability and that an actually painful joint is entitled to at least the minimum compensable rating for the joint under the appropriate Diagnostic Code. Petitti v. McDonald, 27 Vet. App. 415, 424 (2015). 

Where there is a question as to which of two evaluations shall be applied, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria required for that rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7. When after careful consideration of all procurable and assembled data, a reasonable doubt arises regarding the degree of disability such doubt will be resolved in favor of the claimant. 38 U.S.C. § 5107(b); 38 C.F.R. §§ 3.102, 4.3.

Here, the Board finds that the Veteran is entitled to a 10 percent rating based on painful motion under 38 C.F.R. § 4.59 for each his left knee and left hip disabilities. 

Limitation of motion of the hip (or thigh) is rated under 38 C.F.R. § 4.71a under Diagnostic Codes 5251, 5252, and 5253.

Diagnostic Code 5251 provides ratings for limitation of thigh extension with a single 10 percent rating available for extension limited to 5 degrees.

Diagnostic Code 5252 provides ratings for limitation of thigh flexion with the following ratings assigned: 10 percent for flexion limited to 45 degrees, 20 percent for flexion limited to 30 degrees, 30 percent for flexion limited to 20 degrees, and 40 percent for flexion limited to 10 degrees. 38 C.F.R. § 4.71a, Diagnostic Code 5252.

Diagnostic Code 5253 provides ratings for limitation of thigh abduction, adduction, or rotation with the following ratings assigned: 10 percent for limitation of rotation such that the Veteran cannot toe-out more than 15 degrees; 10 percent for limitation of abduction such that the Veteran cannot cross his/her legs; and, 20 percent for limitation of abduction with motion lost beyond 10 degrees. 38 C.F.R. § 4.71a, Diagnostic Code 5253.

Normal hip flexion is to 125 degrees, normal hip extension is to 0 degrees, and normal hip abduction is to 45 degrees. See 38 C.F.R. § 4.71, Plate II.

Limitation of motion for the knee is rated under 38 C.F.R. § 4.71a under Diagnostic Codes 5260 and 5261.

Diagnostic Code 5260 provides ratings for limitation of flexion with the following ratings assigned: 0 percent for flexion limited to 60 degrees, 10 percent for flexion limited to 45 degrees, 20 percent for flexion limited to 30 degrees, and 30 percent for flexion limited to 15 degrees. 38 C.F.R. § 4.71a, Diagnostic Code 5260.

Similarly, Diagnostic Code 5261 provides ratings for limitation of extension with the following ratings assigned: 10 percent for limitation of extension to 10 degrees, 20 percent for limitation of extension to 15 degrees, 30 percent for limitation of extension to 20 degrees, 40 percent for limitation of extension to 30 degrees, and 50 percent for limitation of extension to 45 degrees. 38 C.F.R. § 4.71a, Diagnostic Code 5261.

Normal knee flexion is to 140 degrees, and normal knee extension is to 0 degrees. See 38 C.F.R. § 4.71, Plate II.

When assigning a disability rating, some of the regulations preceding the rating schedule add flexibility to the listed Diagnostic Codes. 38 C.F.R. § 4.59 is one such regulation. In Petitti v. McDonald, 27 Vet. App. 415, 424 (2015), the Court noted that § 4.59 “explain[s] how to arrive at proper evaluations under the DCs appearing in the disability rating schedule.” The provisions of § 4.59 acknowledge that a claimant’s disability may cause actual pain or painful motion but still not be severe enough to warrant a compensable rating under the appropriate Diagnostic Code. Accordingly, when there is evidence of painful motion, § 4.59 operates to provide at least the minimum compensable rating available under the Diagnostic Code for the joint. See Sowers v. McDonald, 27 Vet. App. 472, 478 (2016).

In the instant case, the Veteran has subjectively complained of left knee and left hip pain when running, walking, and going up and down stairs. Such reports are consistent with painful motion so as to warrant a 10 percent rating under § 4.59 for each the left knee and left hip. A higher rating is not, however, warranted for the left hip under Diagnostic Codes 5251, 5252, or 5253, as range of motion was normal on VA examination in November 2017, and the examination was essentially silent for left hip findings as discussed in the factual findings above. Similarly, a higher rating is not warranted for the left knee under either Diagnostic Codes 5260 or 5261. Range of motion was normal on VA examination in November 2017 and during VA treatment in August 2018. Given the foregoing, a 10 percent rating is warranted by operation of § 4.59, but a higher rating is not warranted for either the left hip or left knee.

The Board has also considered whether separate ratings may be assignable under any other diagnostic code, but finds that no other codes are applicable here for either the left knee or left hip. In this regard, as discussed, the VA examinations and clinical evidence during the relevant period are essentially silent for findings related to the left knee or left hip, to include any limitation of motion, instability, weakness, or meniscal involvement. To the extent that the Veteran has reported subjective feelings of giving way and muscle weakness in his left lower extremity, the Board finds the objective evidence to be more probative, particularly in light of the lack of complaints or findings in the VA treatment notes related to the left hip or left knee, and the Veteran’s reported involvement in activities which he subjectively reported he could not do. Thus, the Board finds that separate ratings are not available under any other diagnostic code for either the left hip or left knee.

2. Service Connection for Sleep Apnea 

Generally, in order to prove service connection, there must be competent, credible evidence of 1) a current disability, 2) in-service incurrence or aggravation of an injury or disease, and 3) a nexus, or link, between the current disability and the in-service disease or injury. See, e.g., Davidson v. Shinseki, 581 F.3d 1313 (Fed. Cir. 2009); Pond v. West, 12 Vet. App. 341 (1999). 

In this case, as discussed in the factual findings above, the evidence establishes a current disability, as a December 2015 VA sleep study confirmed a diagnosis of obstructive sleep apnea. Additionally, the record establishes in-service incurrence, as the STRs document the Veteran’s complaints of sleep difficulty, snoring, unrestful sleep, witnessed pauses or “stops” in breathing, and evidence of apnea-hypopnea events on sleep study. Finally, the negative opinion evidence is inadequate for rating purposes, and the record contains otherwise competent and credible evidence of a nexus between the in-service complaints and the current sleep apnea disability, including the lay statements of the Veteran and his then-wife.

While the Board recognizes that the Veteran did not meet the criteria for a diagnosis in service, it is clear from the evidence of record that the initial clinical onset of sleep apnea nonetheless was in service, as subjectively shown by the Veteran’s complaints of snoring, interrupted breathing, and unrestful sleep in the STRs, and objectively shown by a sleep study in service documenting an apnea-hypopnea index (AHI) of 3 (where an AHI between 5-10 is considered mild sleep apnea, as discussed in a November 2010 STR). The evidence further shows that the Veteran’s sleep apnea continued post service and progressed in severity such that he initially met the criteria when he sought treatment for his symptoms in 2015, at which time sleep study showed an AHI of 26.3.

In light of the foregoing, the Board finds that the Veteran’s current obstructive sleep apnea began during active service such that service connection is warranted.

 

 

S. C. KREMBS

Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board A. Fagan

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential, and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.